UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

KEVIN MIESES,

Defendant.

**ORDER**

17 Cr. 251 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On September 18, 2018, Defendant Kevin Mieses pled guilty to conspiring to distribute and possess with intent to distribute 28 grams and more of cocaine, in violation of 21 U.S.C. § 846 and 841(b)(1)(B). (Sept. 11, 2018 Plea Agreement; Sept. 18, 2018 Plea Tr. (Dkt. No. 186) at 6) On December 6, 2018, this Court accepted the Defendant's guilty plea and remanded him. (See Dkt. No. 199; Order (Dkt. No. 202); Dec. 6, 2018 Hearing Tr. (Dkt. No. 210))

Mieses's guilty plea arose from his involvement in the "Mosholu Money Over Bitches" gang ("MMOB"), which sold crack cocaine, Percocet, and marijuana in and around the Norwood section of the Bronx from July 2016 to April 2017. (Sent. Tr. (Dkt. No. 325-1) at 11) Although Mieses was, for a time, one of the gang's top retail sellers of crack cocaine, his role in the conspiracy diminished over time. (Govt. Br. (Dkt. No. 232) at 2) Indeed, "there is evidence . . . that [Mieses] on his own and prior to his arrest had come to the conclusion that selling drugs was wrong and was something that he wanted to stop." (Sent. Tr. (Dkt. No. 325-1) at 14)

Mieses faced a Sentencing Guidelines range of 63 to 78 months' imprisonment, with a statutory minimum mandatory sentence of 60 months' imprisonment. (Id. at 6-7; see also 21 U.S.C. § 841(b)(1)(B)) This Court sentenced Mieses to the mandatory minimum sentence of

60 months' imprisonment.  In doing so, this Court noted that "if [the Court] had discretion, [it] would . . . impose a lesser sentence."  (Sent. Tr. (Dkt. No. 325-1) at 13)

Mieses is now incarcerated at the Federal Correctional Institution Allenwood Low ("FCI Allenwood Low").  (Def. Br. (Dkt. No. 322-1) at 7)[1]  He has served approximately 25 months of his 60-month sentence, and has a release date of March 4, 2022.  (Santillo Decl., Ex. 1 (Dkt. No. 322-3) at 3)

On or about December 7, 2020, Mieses applied to the warden of FCI Allenwood Low for compassionate release, and on December 15, 2020, the warden denied his application.  (Id., Ex. 7 (Dkt. No. 322-9); Def. Br. (Dkt. No. 322-1) at 16)

On December 31, 2020, Mieses filed a motion with this Court for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Def. Mot. (Dkt. No. 322))  Mieses contends that he is entitled to compassionate release because he suffers from obesity and "his lungs have been compromised" as a "long-time marijuana user."  According to Mieses, these conditions render him more susceptible to contracting the COVID-19 virus, and will give him a poorer prognosis if he contracts the virus.  (Def. Br. (Dkt. No. 322-1) at 5)  Mieses also contends that there has been an "explosive outbreak of COVID-19" at FCI Allenwood Low.  (Id.)  Finally, Mieses argues that the Section 3553(a) factors favor his release.  (Id. at 6)

The Government agrees that (1) Mieses has exhausted his administrative remedies; and (2) "in light of the COVID-19 pandemic and the CDC's COVID-19 guidance on risk factors (particularly obesity) for severe COVID-19 illness, the defendant has demonstrated extraordinary and compelling reasons [for compassionate release] under 18 U.S.C.

---

[1]  The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

§ 3582(c)(1)(A)." (Govt. Br. (Dkt. No. 325) at 3))  The Government nonetheless opposes the Defendant's application, based on its analysis of the Section 3553(a) factors. (Id.)  According to the Government, "the seriousness of his offense, [the Defendant's] short period of incarceration, and incomplete rehabilitation, [and] the need for adequate deterrence and the likelihood of Mieses's recidivism" all argue against compassionate release. (Id. at 7)

For the reasons stated below, Mieses's application for compassionate release will be granted.

## DISCUSSION

### I. LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A)(i) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . , reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to the statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." (Id.)

A court considering an application for compassionate release must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine whether there are "extraordinary and compelling reasons [that] warrant such a reduction." (Id.)  "[T]he district

3

court has broad discretion in evaluating a defendant's motion for compassionate release," United States v. Vargas, No. 88-CR-325 (VEC), 2020 WL 6886646, at *3 (S.D.N.Y. Nov. 24, 2020), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them . . . ." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

## II.  ANALYSIS

The parties agree that Mieses (1) exhausted his administrative remedies; and (2) suffers from an obesity condition that renders him susceptible to the COVID-19 virus, and at greater risk if he contracts the virus. The parties further agree that the Defendants' susceptibility to the COVID-19 virus, and poorer prognosis in the event of infection, constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i) justifying compassionate release. (Def. Br. (Dkt. No. 322-1) at 16-17; Govt. Br. (Dkt. No. 325) at 3)  The parties diverge as to the Section 3553(a) factors, however, with the Government arguing that consideration of these factors requires that the Defendant's application be denied, and the Defendant arguing to the contrary.

> 18 U.S.C. § 3553(a) directs a sentencing court to consider
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

>>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>(3) the kinds of sentences available;
>
>(4) the kinds of sentence and the sentencing range established for –
>
>>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
>(5) any pertinent policy statement—
>
>>(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

This Court carefully considered the Section 3553(a) factors at sentencing. As to the nature of Mieses's offense, this Court acknowledged that – for the period between July 2016 and December 2016 – Mieses was a top seller of crack cocaine for the MMOB gang, and was responsible for the distribution of 250 grams of crack cocaine and 500 grams of powder cocaine. (Sent. Tr. (Dkt. No. 325-1) at 11-12) The Court found, however, that the Defendant's participation in the conspiracy waned by December 2016, long before the conspirators were arrested in April 2017. In connection with the instant motion, the Government confirms that the Defendant's involvement with MMOB had declined to such an extent that, by December 2016, "law enforcement did not pursue further authorization to intercept his communications." (Govt. Br. (Dkt. No. 325) at 2) The Court accepted at sentencing, and accepts now, Defendant's

assertion that by December 2016, he had decided that his sale of crack cocaine was wrong and decided to stop this illegal activity. (Sent. Tr. (Dkt. No. 325-1) at 11-12, 14)

As to Mieses's personal history and characteristics, the Court noted that "he has worked as a home health aid[e] and also in construction" and had obtained an OSHA certification and taxi license before his arrest. (Id. at 12; PSR ¶¶ 77-78, 80-81) As to criminal record, Mieses's most recent offense – stealing bicycles – had been committed eight years earlier, when he was age 18. He was adjudicated a youthful offender both for that offense and a shoplifting offense – stealing a tee shirt – committed while he was age 17. (PSR ¶¶ 50-51) While age 17, Mieses also received a conditional discharge for criminal possession of a weapon in the fourth degree. (Id. ¶ 49) Mieses had received no jail time for any of these offenses (PSR ¶¶ 49-51), and he incurred no arrests between January 2011 and his arrest in the instant case on April 17, 2017. The Court commented that

> [t]he impression is of someone who got into trouble in his youth and then decided to take a different path. The hows and whys of what led him to sell drugs in 2016 are, of course, unexplained.

(Sent. Tr. (Dkt. No. 325-1) at 13)

Given these circumstances, the Court expressed the view that the statutory five-year minimum mandatory sentence required by the Defendant's guilty plea was excessive:

> As I said at the outset, because of the five-year mandatory minimum, I have very little discretion here. I will say that if I had discretion, I would use it to impose a lesser sentence. The defendant was involved in crime as a teenager but has had no convictions since those years. He's never done any prison time, so there's no basis for finding that a five-year sentence is necessary to deter him. It could be that a shorter sentence would be adequate to deter him.
>
> Moreover, and this is very unusual in my experience, there is evidence here that the defendant on his own and prior to his arrest had come to the conclusion that selling drugs was wrong and was something that he wanted to stop. There's also evidence of lawful employment, and there's evidence of significant family support. So[,] under the circumstances, while it's clear that some period of incarceration is necessary, it's not

6

clear to me that five years' imprisonment is necessary. And if I had the discretion to impose a lower sentence, I would, but I don't. So I'll grant a variance downward to the mandatory minimum of five years.

(Sent. Tr. (Dkt. No. 325-1) at 13-14)

During his twenty-five months in custody, Mieses has had no disciplinary infractions; he has worked towards his GED and taken a variety of classes; and he has enrolled in the Bureau of Prison's Residential Drug Abuse Program ("RDAP"). (Def. Br. (Dkt. No. 322-1) at 5, 7; Santillo Decl., Ex. 2 (Dkt. No. 322-4) at 2-3) Bureau of Prisons' records show that Mieses has a projected release date of March 4, 2022, and has a "home detention eligibility date" of September 4, 2021. (Def. Br. (Dkt. No. 322-1) at 24, Ex. 1 (Dkt. No. 322-3) at 2)

Given the Defendant's positive adjustment to incarceration, as well as all the circumstances set forth by this Court at sentencing, a reduction in Mieses's sentence now would be consistent with the Section 3553(a) factors. And in light of the Defendant's susceptibility to the COVID-19 virus and the fact that he is being held in a facility that has – over the past month – seen a sharp increase in the number of COVID-19 cases in the inmate population and staff (compare United States Probation and Pretrial Services Mem. (Dkt. No. 325-2) at 1 ("As of December 2, 2020, FCI Allenwood Low currently has five (5) inmates who are positive for Covid-19") with Santillo Decl., Ex. 6 (Dkt. No. 322-8) at 3 (136 inmates at FCI Allenwood Low tested positive for COVID-19 on December 23, 2020), 4 (119 inmates at FCI Allenwood Low tested positive for COVID-19 on December 28, 2020)), compassionate release is appropriate.[2]

---

[2] According to Bureau of Prisons records, as of January 11, 2021, nine inmates and twelve staff members at FCI Allenwood Low have an active case of COVID-19; ninety-two inmates and twenty-five staff members at the neighboring FCI Allenwood Medium have an active case of COVID-19. Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed Jan. 11, 2021).

**CONCLUSION**

For the reasons stated above, Mieses's application for compassionate release is granted, and he is hereby placed on supervised release. The terms and conditions of Mieses's supervised release (see Judgment (Dkt. No. 241)) are amended as follows:

1. The defendant shall serve the first six months of supervised release on home incarceration, to be enforced by GPS Monitoring at a residence approved by the Probation Department.

2. In light of the COVID-19 pandemic, the defendant must remain at his approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by the Probation Department.

3. The defendant is to possess or have access to a telephone that will allow video conferencing with the Probation Department.

4. In the event that the U.S. Probation Office is not able to implement electronic monitoring immediately upon Mieses's release, in the interim Mieses will be in daily contact with his U.S. Probation Officer, whether by videoconference or by telephone.

Dated: New York, New York
January 13, 2021

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge